UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MICHAEL DINSMORE and
KRISTIE DINSMORE,

        Plaintiffs,

v.

SUMMIT POLYMERS, INC.,

        Defendant.

_____/

Case No. 1:03-CV-538

Hon. Richard Alan Enslen

**OPINION**

        This matter is before the Court to resolve the parties' Motions *in Limine*. These Motions have been fully briefed. Oral argument is unnecessary and would only delay the resolution of the Motions.

        Plaintiffs Michael Dinsmore and Kristie Dinsmore have alleged claims in Counts I and II of their Complaint for sexual harassment, gender discrimination and retaliation. The claims for sexual harassment and gender discrimination are made by Plaintiff Kristie Dinsmore, a former employee of Defendant Summit Polymers, Inc. The claims for retaliation are made by Plaintiff Michael Dinsmore, a former employee of Defendant and the husband of Kristie Dinsmore, who claims that he was discharged because of his support of his wife's claims of discrimination. Count I pleads these claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Count II pleads these claims under the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*

        Although the Federal Rules of Evidence do not explicitly authorize motions *in limine*, these motions are a recognized custom of the federal courts, implicit in courts' inherent authority to manage

trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Such motions are useful devices for streamlining trials and avoiding jury prejudice. *See* Fed. R. Evid. 103(c).

Evidentiary rulings depend in large part on the trial court's assessment of relevance and prejudice. Under Federal Rule of Evidence 401, "relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

Plaintiffs' Motion *in Limine* requests the following rulings: (1) to exclude evidence that Mike and Kristie Dinsmore (before their marriage) had an extra-marital affair with one another, and exclude evidence that Mike Dinsmore also had an extra-marital affair with another woman; (2) to exclude hearsay documents (affidavits of Rui Barradas and Henrique Neto); (3) to exclude a notice of decision by Michigan's unemployment compensation agency which denied her unemployment benefits; (4) to rule admissible testimony by defense witnesses about a severance agreement offered to Plaintiff Michael Dinsmore; (5) to instruct the jury that they may infer that employee Scott Clark had negative employment evaluations because these were not produced in discovery; (6) to instruct the jury that they may infer that programs lists which were not produced in discovery would show that Plaintiff Kristie Dinsmore was assigned lesser responsibilities than her male co-workers; (7) to instruct the jury that they may infer that Program Staffing Summaries which were not produced in discovery would show that Plaintiff Kristie Dinsmore was not rated similarly to male co-workers and her rating was not used in the same manner as the rating for male co-workers; and (8) to instruct the

2

jury that they may infer that missing "cheat sheets" of Bob Rhea would show that Kristie Dinsmore was given fewer responsibilities for tools and parts than her male co-workers.

Defendant has requested the following rulings: (1) to exclude any evidence concerning an unpled claim for marital status discrimination; (2) to exclude any evidence comparing Kristie Dinsmore to male co-workers because they were not similarly situated; (3) to exclude evidence concerning whether Bob Rhea had sexual relations with certain women; (4) to exclude evidence concerning an offer to Michael Dinsmore of a severance agreement; and (5) to exclude evidence of economic damages arising after December 11, 2003.

The Court will analyze these various requests and group them by subject matter.

### Extra-Marital Affairs and Sexual Relations

As to the extra-marital affairs of Kristie and Michael Dinsmore, evidence as to these affairs is wholly unrelated to the proofs of their claims and to any of Defendant's potential defenses with one exception. Furthermore, even if the affairs were related to a potential defense, the evidence should be excluded under Rule 403 because the unfair prejudice arising from the evidence far outweighs any probative value. The one exception relates to the argument made in Defendant's Brief in Opposition. Defendant intends to introduce testimony concerning when Kristie and Michael Dinsmore's relationship began because they have made inconsistent statements on this topic and because it relates to the propriety of their workplace conduct. Defendant intends to show that they began dating while working in the same department and without bringing the nature of their relationship to the attention of their supervisors. The Court will permit such testimony **although the testimony should be elicited in terms of the timing of the dating relationship and not as to**

3

**whether the relationship constituted a marital affair**. This latter restriction is intended to prevent unfair prejudice under Rule 403.

As to Bob Rhea's sexual relations, the Court agrees with defense counsel to the extent that questions as to whether or not he did have sexual relations with Summit Employees or other persons is wholly irrelevant and prejudicial, and should be excluded. However, Plaintiff Kristie Dinsmore's gender discrimination claim relates to the manner in which female workers are viewed in the work place. The Court understands that there will be testimony that Bob Rhea bragged in the workplace about his sexual exploits, made comments about women's bodies, and called himself a "poster child for sexual harassment training." This testimony is relevant and admissible since it tends to show that Bob Rhea (who had some management responsibilities) viewed women in a negative light unrelated to their job performance. As such, comments of this type will be permitted into evidence. Such comments are prejudicial, but they are not unfairly prejudicial and their probative value is not outweighed by the potential for unfair prejudice.

### Severance Agreement

Defendant seeks to exclude the offer of a severance agreement to Michael Dinsmore under Federal Rule of Evidence 408, which Rule routinely excludes evidence of settlement offers in civil cases. Plaintiffs' counsel acknowledges the premise and the importance of Rule 408, but asks that the Court permit a limited inquiry. The inquiry sought are questions of Michael Dinsmore which would elicit that a severance offer was made to him in which he had a 28-day period to accept the severance and when he asked Todd Bierman (management) why he had been selected for a one-man reduction in force, Bierman responded that he would tell Dinsmore in 28 days.

Given the force of Rule 408, the Court will exclude any evidence as to the offer of a settlement. *See Swan v. Interstate Brands Corp.*, 333 F.3d 863, 864 (8th Cir. 2003). However, the Court will permit a limited inquiry of the sort sought by Plaintiffs' counsel. Michael Dinsmore will be permitted to testify that he received notice from the company that he had 28 days to exercise his severance rights and that Bierman then said that he could not discuss Dinsmore's termination for the 28-day period. This will not, in the Court's judgment, suggest any negotiation or offers of settlement to the jury. It will also enable proper testimony by Michael Dinsmore concerning the circumstances of his termination and the explanation sought but not given him.[1]

**Evidence of Economic Damages after December 11, 2003**

This evidence pertains to the after acquired evidence rule. This rule in a Title VII case permits an employer to limit damages premised on after acquired evidence of employee misconduct. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362 (1995). Defendant asserts that it has uncontroverted evidence that Plaintiff Michael Dinsmore accepted a gift from a potential supplier in violation of a workplace rule on December 11, 2003 and, therefore, he cannot claim damages because he would have been terminated as of that date for the misconduct. In response, Plaintiffs note, correctly, that this issue is a dispositive issue which should be asserted under Federal Rule of Civil Procedure 56. The assertion of the issue by an *in limine* motion does not permit adequate briefing under the Western District of Michigan Local Civil Rules. *See* W.D. Mich. L. Civ. R. 7.2(c). Furthermore, Plaintiffs' Response suggests that there are genuine issues of material fact

---

[1]The related testimony is also very damaging to Defendant because, among other reasons, Defendant's president, Todd Bierman, said that "[t]here was no real reason" why he was not telling Dinsmore the reason for his termination. (Bierman Dep. at 99; *see also* M. Dinsmore Dep. at 31.)

as to whether Michael Dinsmore violated the workplace rule, whether the rule was ever enforced by the employer, and whether the employer had developed sufficient standards for enforcement of the rule. As such, Defendant's motion as to damages after December 11, 2003 is denied.

### **Evidence as to Work Assignments**

Defendant seeks to preclude introduction of evidence that Kristie Dinsmore received unequal work assignments on the theory that such testimony cannot be presented when, as a matter of law, the plaintiff is not "similarly situated" to male co-workers. Similar to the previous argument, this is a dispositive argument which cannot be properly resolved as a motion *in limine*. Furthermore, the argument tends to depend upon disputed factual circumstances and is made more complicated by Plaintiff Kristie Dinsmore's allegation that the failure to promote her in a like manner to her male co-workers was also discriminatory. Therefore, the relief sought will be denied to Defendant.

### **Hearsay Documents**

Plaintiffs have also moved to exclude the affidavits of Rui Barradas and Henrique Neto as hearsay under Rule 803. The affiants are men employed by a Portugese company/customer of Defendant. Defendant argues that the witnesses are unavailable and, therefore, the affidavits are admissible. This argument is made with reference to Rule 804 which permits certain kinds of statements (that is statements which are reliable in nature) to be admitted when the declarants are unavailable. There are two problems with this argument. The first is that Rule 804(a)(5) defines "unavailability" in terms of whether the proponent "has been unable to procure the declarant's attendance . . . by process or other reasonable means." In this case, the Court assumes that process to compel attendance as to Portugese citizens would be difficult, if not impossible. However, it appears from Defendant's Brief in Opposition that it has not even inquired of the declarants whether

they are willing to voluntarily attend trial. (Def.'s Br. in Opp. at 2.) Under these circumstances, a conclusion of unavailability is improper. Second, even assuming unavailability, the statements at issue do not fall under any of the Rule 804(b) hearsay exceptions. The only likely candidate on that list is the Rule 804(b)(1) exception for former testimony. However, this exception relates to testimony which was subject to cross-examination so as to assure the reliability of the statements. *See* Fed. R. Evid. 804, 1972 adv. comm. notes; *Ohio v. Roberts*, 448 U.S. 56, 65 (1980) (emphasizing importance of cross-examination in terms of the history of the Confrontation Clause and the restriction on the use of hearsay statements). The affidavits in question were not subject to cross-examination and are not sufficiently reliable to permit their introduction. As such, Plaintiffs' request to exclude these statements will be granted.[2]

### Unemployment Agency Notice of Disqualification

Plaintiffs have requested exclusion of a state unemployment agency determination that Plaintiff Kristie Dinsmore was disqualified for unemployment benefits because she voluntarily left the employment of Defendant. Defendant's position is that the statement is admissible and non-hearsay because it contains reference to an admission by a party opponent. Fed. R. Evid. 801(d)(2). The fault in this argument is that the statement at issue was not prepared by Kristie Dinsmore, but was prepared by the state agency–as its legal conclusion concerning Dinsmore. Therefore, the statement will be excluded as hearsay. It will also be excluded under Rule 403 because the notice of an administrative agency's hearing determination is likely to prejudice the jury as to findings in

---

[2]Defendant requested in a single sentence of its Brief in Opposition that should the Court find that affidavits are inadmissible, then it should also exclude a letter by Rui Barradas which Plaintiffs seek to offer. (Def.'s Br. in Opp. at 3.) The Court makes no ruling on the letter because the issue has not been sufficiently briefed and the Court does not understand either the content of the letter or the supposed purpose for which it may be offered.

this suit. While saying so, the Court will not exclude Defendant from asking Dinsmore whether she admitted to the state agency that she voluntarily left the employment of Defendant and from cross-examining her, if necessary, based on her prior agency hearing testimony, if available.

### Inferences as to Documents not Produced in Discovery

As noted above, Plaintiffs have requested that the jury be instructed to draw negative inferences as to several kinds of documents which were requested in discovery and ordered to be produced in response to a Federal Rule of Civil Procedure 37 motion to compel discovery. The Order of September 28, 2004 granted such discovery. The later Order of December 8, 2004 denied Rule 37 sanctions as to the failure to produce the records.[3] The documents, it appears, have not been produced, though they are relevant to Plaintiff Kristie Dinsmore's claims of gender discrimination. The documents were not retained by Defendant even though it was reasonably foreseeable to Defendant that the documents were pertinent to this suit.[4] It is not disputed that the documents were

---

[3]According to United States Magistrate Judge Carmody, this was done because she allowed Plaintiffs an alternative remedy–to utilize an expert to determine if some of the contents of the deleted documents could be re-constructed (which apparently was not attempted due to the unlikely success of such a venture). Magistrate Judge Carmody did not intend by her order to foreclose further remedy including the remedies discussed herein and was of the opinion that Defendant's conduct in discovery was suspicious. The remedy contemplated herein simply gives both parties a fair opportunity to argue this issue to the jury. If Defendant is as blameless as it claims, then a jury of its peers will be free to reach that conclusion.

[4]According to Defendant's counsel, the documents which were prepared by Bob Rhea (the programs lists, staffing summaries, and "cheat sheets") were negligently destroyed. The Clark employment evaluation documents were not produced by Defendant for different reasons. According to Defendant, the initial non-disclosure was due to simple negligence on the part of defense counsel in overlooking the request, but later non-disclosure was due to counsel's determination that the documents were irrelevant because Plaintiff cannot prove that Clark was "similarly situated" to Kristie Dinsmore. (Def.'s Br.f in Opp. at 3-5.) Of course, the Court has determined above that a jury will hear evidence as to whether or not the two were "similarly situated." As such, if the Clark documents are not produced before trial, then the jury would be entitled to an even stronger inference that the Clark documents would disfavor Defendant

routinely prepared and used within the company since some of the documents at issue were retained and disclosed in discovery. It is not known what the discarded documents would have shown, though Plaintiffs' counsel believes that those documents would have been consistent with its theory that Plaintiff Kristie Dinsmore was not afforded treatment similar to her male counterparts and was more qualified than Scott Clark.

What is at issue here is whether to permit an adverse inference due to spoliation of the evidence. This subject, including its common law origins, was explained well by the Sixth Circuit Court of Appeals in the case of *Welsh v. United States*, which said:

> That an adverse presumption may arise from the fact of missing evidence is a generally accepted principle of law that finds its roots in the 18th century case of the chimney sweeper's boy who found a jewel ring, took it to a jeweler for appraisal, got back the ring minus the jewel, and brought an action in trover. *See Armory v. Delamirie,* 1 Strange 505, 93 Eng.Rep. 664 (1722); *see generally* Stier, *Revisiting the Missing Witness Inference,* 44 Md.L.Rev. at 142 & n.22.
>
> The venerable principle of *Armory v. Delamirie* remains good law. In transporting its wisdom to modern cases, the critical question for the courts has been not whether some kind of adverse consequence should flow from the fact of destruction of evidence, but rather how best to integrate the teaching of *Armory* into a coherent scheme of 20th century evidentiary principles that includes inferences, presumptions, and shifting burdens of production and persuasion. *Compare Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.,* 692 F.2d 214, 216-20 (1st Cir. 1982) (adverse inference from document destruction sufficient to shift burden of tracing proceeds of money order sales) *with Stanojev v. Ebasco Services Inc.,* 643 F.2d 914, 923-24 & n.7 (2d Cir. 1981) (adverse inference from nonproduction of personnel records not sufficient to cure plaintiff's failure to make out prima facie age discrimination case). As the *Nation-Wide Check* court explained, the policy rationales for this type of adverse inference are both evidentiary and deterrent. The evidentiary rationale springs from the common sense notion that a party with notice of an item's possible relevance to litigation who proceeds nonetheless to destroy it is more likely to have been threatened by the evidence than a party in the same position who does not destroy it:
>
>> The fact of destruction satisfies the minimum requirement of relevance [under Fed. R. Evid. 401]: it has some tendency, however small, to make the existence of a fact

---

because their current non-production and/or destruction is intentional. Of course, this kind of instruction may be avoided by Defendant by simply disclosing the Clark documents to Plaintiffs' counsel in advance of trial.

> at issue more probable than it otherwise would be.... Precisely how the document might have aided the party's adversary, and what evidentiary shortfalls its destruction may be taken to redeem, will depend on the particular facts of each case. 692 F.2d at 218.
>
> The second rationale acts to deter parties from pretrial spoliation of evidence and "serves as a penalty, placing the risk of an erroneous judgment on the party that wrongfully created the risk." *Id.*
>
> Destruction of potentially relevant evidence obviously occurs along a continuum of fault-- ranging from innocence through the degrees of negligence to intentionality. The resulting penalties vary correspondingly. Some jurisdictions have created causes of action against intentional spoliators. *See Williams v. California,* 34 Cal.3d 18, 664 P.2d 137, 192 Cal.Rptr. 233 (1983); *Smith v. Superior Court,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984); *Bondu v. Gurvich,* 473 So.2d 1307 (Fla. Dist. Ct. App. 1984); *see generally* Comment, *Spoliation: Civil Liability for Destruction of Evidence,* 20 U.Rich.L.Rev. 191 (1986).
>
> Some courts assign no adverse evidentiary consequences to destruction of evidence that is unintentional or satisfactorily explained. *See, e.g., INA Aviation Corp. v. United States,* 468 F.Supp. 695, 700 (E.D.N.Y.), *aff'd mem.,* 610 F.2d 806 (2d Cir.1979). Others apply a panoply of sanctions against spoliators, including those who prior to litigation or to discovery requests discard evidence they know. . . .
>
> The strength of the inference allowable obviously will vary according to the facts and evidentiary posture of a given case. Whether the defendant's actions may result or must result in an inference that the missing evidence would be unfavorable to the spoliator, or result merely in a burden-shifting presumption, will depend upon a case by case analysis. *See Public Health Trust v. Valcin,* 507 So.2d at 600-01 (burden shift); *Thor v. Boska,* 38 Cal.App.3d at 569 n.8, 113 Cal.Rptr. at 303 n.8 (dicta re burden shift); *Kane v. Northwest Special Recreation Ass'n,* 108 Ill.Dec. 96, 155 Ill.App.3d 624, 508 N.E.2d 257, 261-62 (1987) (when plaintiff's mother washed away possible scientific evidence of mentally retarded daughter's rape in civil suit against institution, proper to instruct jury on permissible adverse factual inference).

*Welsh v. United States*, 844 F.2d 1239, 1246-47 (6th Cir. 1988); *see also Smith v. United States*, 128 F. Supp. 2d 1227, 1233 (E.D. Ark. 2000); *cf. Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155-56 (4th Cir. 1995) (not permitting a negative inference without proof of intentional destruction of documents).

This Court accepts that *Welsh* is the law of this Circuit and permits the district courts ample discretion in affording sanctions for both pre-suit and post-suit destruction of evidence, whether it relates to negligent or intentional destruction or failure to retain evidence. The Court believes that

the apparently negligent failure to retain documents in this suit warrants jury instructions permitting the jury to draw a negative inference in their discretion. However, the Court will design that instruction with the assistance of counsel to afford the jury maximum discretion in their fact finding. The Court believes that the instruction should advise the jury to assess the pertinent circumstances surrounding the destruction of relevant evidence in determining whether to draw any negative inference from the destruction of the evidence. To this extent, Plaintiffs' request for special jury instructions will be granted.

### Marital Status Claim

Defendant argues that Plaintiff Michael Dinsmore has not properly pled a claim of discrimination based upon marital status and, therefore, evidence that Defendant discriminated against him because of his marital status should not be permitted. This argument is true and proper, but ignores both the substance of the testimony, the nature of the claims asserted and Federal Rule of Civil Procedure 15. Plaintiff Michael Dinsmore has long asserted a retaliation claim which is premised in substantial part on his marriage to Plaintiff Kristie Dinsmore and his support of her claims of gender discrimination. Thus, it has been implicit in his retaliation claim that Defendant took action against him, in part, because of his marriage to Kristie Dinsmore. For this reason, evidence like testimony that the company president told Michael Dinsmore "now you are married you will be treated as a unit . . . " (M. Dinsmore Dep. at 43) will be permitted. Rule 15 permits very liberal amendment of pleadings, especially when the amendment would not unfairly prejudice the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182-83 (1962). Rule 15(b) also permits the Court to receive evidence of unpled claims. As such, the evidence will be permitted and the pleadings will be deemed amended to conform to the evidence.

## **CONCLUSION**

In accordance with the Court's Opinion, an Order shall enter resolving the Motions in Limine as stated herein.

                                                    /s/ Richard Alan Enslen

DATED in Kalamazoo, MI:            RICHARD ALAN ENSLEN
        April 29, 2005                    UNITED STATES DISTRICT JUDGE